IN THE ST. LOUIS COUNTY CIRCUIT COURT
STATE OF MISSOURI

| | |
|---|---|
| PETER FISCHER,<br>*individually and on behalf of*<br>*all others similarly situated,*<br><br>**Plaintiffs,**<br><br>v.<br><br>VITAL PHARMACEUTICALS, INC.,<br>d/b/a "VPX Sports," and<br>DOES 1 through 10,<br><br>**Defendants.** | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION PETITION

Plaintiff Peter Fischer, individually and on behalf of all similarly-situated Missouri citizens, hereby files this, his Class Action Petition, against Defendant Vital Pharmaceuticals, Inc., *doing business as* "VPX Sports," and DOES 1 through 10 (collectively "Defendants") for their false, misleading, and deceptive marketing of their products in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA"), and constituting breach of warranty, breach of implied contract, and unjust enrichment under Missouri law.

### I.   INTRODUCTION

1. Defendant VPX Sports markets and sells different health-related products to Missouri citizens, including supplements, energy drinks and protein bars. One of VPX Sport's most-popular products is a line of functional beverages sold under the brand name "Bang." The "Bang" product is a drinkable liquid packaged in a 16fl oz. aluminum canister that claims to be "Potent Brain and Body Fuel."

2. The "Bang" line of products is deceptively and misleadingly marketed as containing "SUPER CREATINE." Creatine is a very popular supplement among athletes and bodybuilders that has

1

proven benefits, helping users to gain muscle, enhance strength, and improve exercise performance.

3. However, despite claiming to contain "SUPER CREATINE," the "Bang" product contains no creatine whatsoever; "SUPER CREATINE" is *not* creatine. Instead, what VPX Sports deceptively and falsely claims to be "super" creatine is in fact a wholly different substance, "creatyl-l-leucine."

4. Creatyl-l-leucine is a substance unique to VPX Sports and to the "Bang" product. Defendant claims the substance is "creatine bonded to L-leucine." If that is the case, the substance is not creatine. Two chemical compounds "bonded" together form a wholly unique substance.

5. For that reason, Defendant's further listing "creatine" in brackets following "SUPER CREATINE" in the "Ingredient" portion of the product's labeling is also deceptive to an average consumer. Because of the chemical bonding that occurs, from a scientific standpoint, "SUPER CREATINE" is not creatine. Yet an average consumer does not necessarily know as much, which renders Defendant's listing "creatine" for a second time in the "Ingredients" section doubly deceptive to a normal consumer.

6. In short, "SUPER CREATINE" is not creatine, and the "Bang" products contain no creatine. By nonetheless using the "SUPER CREATINE" label on the "Bang" product – and by confusingly listing "creatine" under the "Ingredients" portion of the label – Defendant VPX Sports is knowingly deceiving consumers. Creatine has multiple proven physiological benefits; "creatyl-l-leucine" does not.

7. In this fashion, VPX Sports sells the product to the buying public, misleading and deceiving consumers into paying for an inferior product while under the false impression that it has benefits that it does not contain.

8. Pursuant to the MMPA, such practice is illegal.

9. In addition and/or in the alternative to the above, since the initial offering of the Product,

2

each and every container of the Product has borne a uniformly-worded label falsely claiming the Product contains "SUPER CREATINE." That uniformly-worded false statement gives rise to additional and/or alternative claims under Missouri law.

## II.   PARTIES, JURISDICTION, AND VENUE

10.   Plaintiff Peter Fischer is a citizen and resident of St. Louis City, Missouri.

11.   Plaintiff brings this Class Action Petition individually and on behalf of a putative class of Missouri citizens, and only Missouri citizens.

12.   Defendant Vital Pharmaceuticals, Inc. ("VPX Sports") is a Florida Corporation that has its principal place of business at 1600 North Park Drive, Weston, Florida 33326.

13.   Defendant VPX Sports advertises, distributes, markets and sells the "Bang" line of products deceptively and misleadingly marketed as containing "SUPER CREATINE."

14.   The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. If necessary, Plaintiff will seek leave of Court to amend the Petition to reflect the true names and capacities of the DOE Defendants when such identities become known.

15.   Venue is proper in this Court because Plaintiff was injured in this venue and lives within this venue.

16.   This asserted class action comports with Missouri Supreme Court Rule 52.08 and with R.S.Mo. § 407.025(3) of the MMPA. Plaintiffs' identities can be ascertained from Defendant's records, but are so numerous that simple joinder of all individuals is impracticable. This action raises questions of law and fact common among Plaintiffs. The claims of lead Plaintiff is typical of all Plaintiffs' claims. Named Plaintiff will fairly and adequately protect all Plaintiffs' interests, and is represented by attorneys

3

qualified to pursue this action. More specifically:

17.  <u>Class definitions</u>: Plaintiff Peter Fischer brings this action on behalf of himself and a class of similarly-situated Missouri citizens preliminarily-[1]defined as follows: All Missouri citizens who purchased "Bang" products (the "Product")[2] during the Class Period in Missouri. The Class Period begins five years prior to the date of the filing of this Petition, and ceases upon the date of the filing of this Petition. Excluded from the Class and Subclass are: (a) any judges presiding over this action and members of their staffs and families; (b) the Defendants and their subsidiaries, parents, successors, and predecessors; any entity in which the Defendants or their parents have a controlling interest; and the Defendants' current or former officers and directors; (c) employees (i) who have or had a managerial responsibility on behalf of the organization, (ii) whose act or omission in connection with this matter may be imputed to the organization for liability purposes, or (iii) whose statements may constitute an admission on the part of the Defendants; (d) persons who properly execute and file a timely request for exclusion from the class; (e) the attorneys working on the Plaintiffs' claims; (f) the legal representatives, successors, or assigns of any such excluded persons; and (g) any individual who assisted or supported the wrongful acts delineated herein.

18.  <u>Numerosity</u>: Upon information and belief, the Class and Subclass includes a few thousand individuals on a statewide basis, making their individual joinder impracticable. Although the exact number of Class members and their addresses are presently unknown to Plaintiff, they are ascertainable from Defendants' records.

19.  <u>Typicality</u>: Plaintiff's claims are typical of those of the Class because all Plaintiffs were injured by the Defendants' uniform wrongful conduct, specifically, using misleading and deceptive marketing and advertising in offering and selling the Product to Plaintiffs.

---

[1] Plaintiff reserves the right to propose, as needed, any different or other more- or less-specific class, classes, subclass, or subclasses as Plaintiff deems appropriate for purposes of class certification.
[2] As that term and label is defined in greater detail *infra*.

4

20. <u>Adequacy</u>: Plaintiff Peter Fischer is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent and experienced counsel, and he intends to prosecute this action vigorously. The interests of the Class will be protected fairly and adequately by Plaintiff and his counsel.

21. <u>Commonality</u>: Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual members, such as: (a) whether the Defendant used deceptive or misleading marketing and advertising in selling the Product; (b) whether and to what extent the Class members were injured by Defendant's illegal conduct; (c) whether the Class members are entitled to compensatory damages; (d) whether the Class members are entitled to declaratory relief; and (e) whether the Class members are entitled to injunctive relief.

22. <u>Superiority</u>: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The damages suffered by the individual Class members will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by the Defendant's wrongful conduct. Thus, it would be extremely difficult for the individual Class members to obtain effective relief. A class action presents far fewer management difficulties and provides the benefits of a single adjudication, including economies of time, effort, and expense, and uniformity of decisions.

### III.   **BACKGROUND**

23. Defendant manufactures, distributes, and/or sells the product at issue herein, "Bang"-branded functional beverage described as "Potent Brain and Body Fuel" and purportedly containing "SUPER CREATINE." (the "Product").

24. Defendant VPX Sports, in particular, owns the "Bang" brand and, under that brand name, manufactures and distributes, *inter alia,* the Product.

25. The Product is marketed as purportedly being "potent brain and body fuel," and

5

containing, *inter alia,* "SUPER CREATINE."

26.     The packaging of the Product, regardless of its flavor or color, makes the same uniform claim, that it contains "SUPER CREATINE":



a.

27.     As shown, the Product, regardless of flavor or color of packaging, uniformly claims to contain "SUPER CREATINE."

28.     In addition, the Product, on the back side of each can, provides as follows:



a.

6

29. As shown, along with multiple other ingredients, "SUPER CREATINE" is listed in prominent, bold lettering under the "INGREDIENTS" heading on the label on the back side of the Product. Following that, in brackets, the label confusingly lists "creatyl-l-leucine (creatine bonded to l-leucine)." Even though "creatyl-l-leucine" is a wholly unique substance from creatine, the average consumer would not know this and would instead be doubly deceived by yet another confusingly deceptive listing of "creatine" under the "Ingredients" portion of the product's label.

30. In short, on both the front and back of the Product, the Product expressly claims to contain "super" creatine. The Product's confusing "explanation" of "SUPER CREATINE" only further confuses a consumer into believing the Product contains creatine.

31. In all events, it is irrefutable that the Product does not, in fact, contain any creatine.

32. And, unlike creatine, which has well-established and scientifically-proven physiological benefits, creatyl-l-leucine has no proven benefits whatsoever.

33. VPX Sports' claims that the Product contains "SUPER CREATINE" are patently deceptive and misleading because the Product contains no creatine.

34. Because creatine is scientifically-proven to provide beneficial physiological effects, consumers purchase the Product specifically because it claims to contain creatine.

35. If not for the false claim that the Product contains creatine, VPX Sports would not sell as much of the Product as it does, in Missouri.

36. Upon information and belief, Defendant VPX Sports profits from the wide-spread practice of selling a Product that does not actually contain the ingredients it purports to contain.

37. Defendant's marketing and selling of the Product by use of the aforementioned false, deceptive, and misleading statements is illegal and prohibited under the MMPA and Missouri common law.

*Allegations Relating Specifically to Claims of Missouri Class*

38. As noted, *supra,* since the initial offering of the Product, each and every container of the Product has borne one or more uniformly-worded labels falsely claiming the Product contains "SUPER CREATINE" (hereinafter "False Claims").

39. In reality, testing and usage of the Product reveals the falsity of the False Claims; the Product does not contain creatine.

40. Defendant, as developer, manufacturer, and exclusive seller and distributor of the Product, has been aware since the Product's inception, that the False Claims are in fact false.

41. Indeed, Defendant undoubtedly did its own testing of the Product prior to it being offered for sale and, of necessity, such testing would have made Defendant aware that the Product contains no creatine.

42. Despite this, Defendants purposely made the False Claims in order to induce the false belief in consumers that they were purchasing a product that contained creatine, and thus would provide the physiological benefits of creatine.

43. Plaintiff and the class members purchased the Product with no reason to suspect or know that the Product does not contain creatine.

44. Defendant possessed specialized knowledge regarding the data and information concerning the formula of the Product and whether the Product did in fact contain creatine.

45. In fact, in regard to the False Claims, the Product is a credence good because its purported creatine benefit cannot be independently assessed or verified by the consumer at the time of purchase.

46. In purchasing the Product, Plaintiff and the class members had no choice but to necessarily and justifiably rely upon the False Claims as accurate.

47. Had Plaintiffs known that the False Claims were false, Plaintiffs would not have

8

purchased the Product or would not have paid as much for the Product.

48. If, at some point in the future, the Product was improved to actually contain creatine, Plaintiffs might then purchase the Product again.

49. As the direct and proximate result of the False Claims, Plaintiff and the class members have suffered economic injury by being deprived of the benefit of the bargain they were promised by Defendant.

50. By marketing, selling and distributing the Product to purchasers in Missouri, Defendant made actionable statements that the Product contained creatine and at all times failed to disclose that the Product did not in fact contain creatine.

51. Defendant engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading, and with the intent that consumers rely upon such concealment, suppression and omissions.

52. Alternatively, Defendant was reckless in not knowing that the False Claims were false and misleading at the time they were made.

53. As the distributor, marketer, producer, manufacturer, and seller of the Product, Defendant possessed specialized knowledge regarding the data and information concerning the chemical formula of the Product which the Plaintiff and the class members could not and did not review.

54. All of Plaintiffs' claims are based on misleading statements that violate FDA regulations. Such claims do not seek to impose any additional or different obligations beyond those already required by such FDA regulations.

*Facts Particular to Peter Fischer*

55. In or around September of 2021, Plaintiff purchased the Product from a third-party retailer while in Missouri.

56. Due to the claims on the packaging, Plaintiff falsely believed he was purchasing a

9

product that contained creatine.

57. Plaintiff thereafter purchased the Product. He purchased the Product primarily for his personal, family and household use, and personally used the Product (by ingesting it).

58. At the time he purchased the Product, Plaintiff was unaware of the falsity of the Product's claims.

59. He discovered that such claims were false shortly after purchasing and ingesting the Product in September.

60. If Plaintiff had been aware of the falsity and misleading nature of Defendant's claims regarding the Product, he would not have bought the Product.

61. When Plaintiff purchased the Product, he was injured by Defendant's illegally deceptive, false, and misleading conduct in marketing and selling the Product.

62. Specifically, Plaintiff suffered an ascertainable loss because he did not receive the expected benefit of his bargain.

63. When Plaintiff was purchasing the Product, due to the false claims upon the Product, Plaintiff believed that he was receiving a product that contained creatine, and thus would provide the physiological benefits of creatine. The Product did not do what Plaintiff bargained for, however; it contained no creatine and conferred none of its benefits.

64. The Product was not what it was purported to be. Plaintiff did not receive the value of what he bargained for; instead Plaintiff received a product that contained none of its most-prominently advertised ingredient.

65. Consequently, Plaintiff was damaged in the amount of the difference between the cost paid for the Product as represented – as one that contained creatine – and the actual value of the product without creatine. Said difference would therefore be a percentage of the price paid for the Product.

66. Although the aforementioned facts apply to named Plaintiff, for purposes of the proposed

Plaintiff and the class members at the time of purchase.

75.     All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of Plaintiff and the class in terms of paying for the Product.

11

Class, all that is relevant is that Plaintiff and the class members, Missouri citizens, purchased the Product at a time within the Class Period while in Missouri.

## CAUSES OF ACTION

## COUNTS RELATING TO THE MISSOURI CLASS

## COUNT ONE: BREACH OF WARRANTY UNDER MISSOURI LAW

67. Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each preceding paragraph of this Class Action Petition.

68. Defendant sold the Product in its regular course of business. Plaintiff and the class members purchased the Product.

69. Defendant made promises and representations in an express warranty provided to all consumers, namely the False Claims.

70. The False Claims became the basis of the bargain between the Defendant and Plaintiff and each class member.

71. Defendant gave these express warranties to Plaintiff and each class member in written form on the labels of the Product.

72. Defendant's written affirmations of fact, promises, and/or descriptions as alleged are each a written warranty under Missouri law.

73. Defendant breached the warranty because the False Claims were false – the Product in fact contains no creatine.

74. The False Claims were false when the sales took place and were undiscoverable to

76. Defendant had actual notice of the false labeling information and to date has taken no action to remedy its breach of express and implied warranty.

77. Specifically, on September 16, 2021, counsel for Plaintiff provided written NOTICE of Defendant's breach of express warranty to Defendant directly and to Defendant's legal counsel in another lawsuit. Despite receiving such correspondence, Defendant has not meaningfully responded, and has taken no action to remedy its breach of express and implied warranty.

78. In addition, Defendant previously knew or should have known of the falsity of the False Claims on the Product due to, *inter alia,* Defendant's testing and use of the Product.

79. Defendant has nonetheless refused to remedy such breaches.

80. By placing the Product in the stream of commerce, and by operation of law and the facts alleged herein, Defendants also impliedly warrantied to Plaintiff and the class members that the Products were accurately labeled in conformance with the law.

81. Defendant's breaches of warranty have caused Plaintiffs and class members to suffer injuries, paying for falsely labeled products, and entering into transactions they otherwise would not have entered into for the consideration paid. As a direct and proximate result of Defendant's breaches of warranty, Plaintiff and class members have suffered damages and continue to suffer damages.

82. As a result of Defendant's breach of these warranties, Plaintiff and class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relied as deemed appropriate, in an amount sufficient to compensate them for not receiving the benefit of their bargain.

## COUNT TWO: BREACH OF IMPLIED CONTRACT UNDER MISSOURI LAW

83. Plaintiff repeats and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

84. By operation of law, there existed an implied contract for the sale of the Product between

Defendant and Plaintiff and each class member who purchased the Product.

85. By operation of Missouri law, there existed an implied duty of good faith and fair dealing in each such contract.

86. By the acts alleged herein, Defendant has violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendant and each class member.

87. As a result of that breach, Plaintiff and each class member suffered damages.

## COUNT THREE: UNJUST ENRICHMENT UNDER MISSOURI LAW

88. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

89. Plaintiffs plead their claim for relief in the alternative to the contract claims set forth above.

90. Plaintiff and the class members have conferred substantial benefits on Defendant by purchasing the Product, and Defendant has knowingly and willfully accepted and enjoyed those benefits.

91. Defendant either knew or should have known that the payments rendered by Plaintiff and the class members were given and received with the expectation that the Product would be as represented and warranted. For Defendant to retain the benefit of the payments under these circumstances is inequitable.

92. Through deliberate misrepresentations or omissions in connection with the advertising, marketing, promotion, and sale of the Products, including the False Claims, Defendant reaped benefits, which result in Defendant wrongfully receiving profits.

93. Equity demands disgorgement of Defendant's ill-gotten gains. Defendant will be unjustly enriched unless Defendant is ordered to disgorge the unjustly obtained portion of profits for the benefit of Plaintiff and the class members.

94. As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment,

Plaintiffs and the class members are entitled to restitution from Defendant and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendant through this inequitable conduct.

## COUNT FOUR: VIOLATION OF THE MMPA – Misleading, False, and Deceptive Marketing

95. Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each preceding paragraph of this Class Action Petition, as though fully set forth herein.

96. Defendant's acts complained of herein occurred in and emanated from the State of Missouri.

97. Plaintiff and all members of the Class are "persons" and the Product is "merchandise" as those terms are defined under the MMPA.

98. As set out in this Petition, Defendant's marketing of the Product constitutes deception, false pretense, misrepresentation, unfair practice, or, at a minimum, the concealment, suppression, or omission of a material fact in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA").

99. As a result of Defendant's actions, consumers, including Plaintiff, were misled or deceived that the Product they were purchasing contained creatine.

100. Defendant's deceptive acts caused Plaintiff and the Class Members an ascertainable loss within the meaning of the MMPA. In particular, Plaintiff and the class paid for a Product that did not, in fact, contain creatine.

101. Due to Defendant's illegal conduct, Plaintiffs are entitled to restitution of all funds improperly obtained by Defendants.

102. Plaintiffs have been forced to hire attorneys to enforce their rights under the MMPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for an order certifying this action as a Missouri class action and appointing Plaintiff Peter Fischer as Class representative and his counsel as class counsel. Plaintiff requests that this court find that the Defendant is liable pursuant to the aforementioned Missouri common law claims; and/or violated the MMPA, and award Plaintiffs compensatory damages, restitution, and attorneys' fees, and such further relief as the Court deems just, including injunctive relief. Although aggregate damages derived from just a percentage of the Product cost certainly will not exceed five million dollars ($5,000,000.00), nonetheless **PLAINTIFF, ON BEHALF OF HIMSELF AND THE PURPORTED CLASS, HEREBY DISCLAIMS AND/OR ABANDONS ANY AND ALL RECOVERY EXCEEDING FIVE MILLION DOLLARS ($5,000,000.00).**

Respectfully submitted,

**DANIEL F. HARVATH, ESQ.**

By: /s/ *Daniel F. Harvath*
Daniel F. Harvath, #57599MO
**HARVATH LAW GROUP, LLC**
75 W. Lockwood, Suite #1
Webster Groves, MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com
*Attorney for Plaintiff*